ENCARNACIÓN ABOY DE CINTRÓN, Appellant v. REGISTRAR OF PROPERTY OF SAN JUAN, (FIRST SECTION), Respondent.

No. 1001. Submitted July 16, 1937.—Decided July 31, 1937.

*Dubón* and *Ochoteco*, for appellants. The registrar appeared by brief.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On May 13, 1876, Mrs. Mónica Vizcarrondo bought a parcel of land which in the purchase deed recorded in the registry was described as follows:

"Parcel of land having a frontage of 39 meters on the highway leading to Río Piedras with which it abuts on the south and its corresponding length (*fondo*) until it reaches the sea, which it borders on the north and on which side it has an extension of 35 meters, also bounded on the east and on the west by other lands of the same vendor."

By virtue of various transfers Mrs. Asunción Andino, widow of Guerra Mondragón, acquired the ownership of the parcel, and in 1907, as a result of an exchange of sixty square meters with Mr. Antonio Alvarez Nava, the owner of the abutting lot, she gave a description of her property, which she has since recorded in the registry in accordance with said description as follows:

"A lot measuring thirty-seven meters along its front on the road, thirty-seven meters along its front on the sea, and one hundred and twenty meters in length (*fondo*), situated in the ward of Santurce of this Municipal District, adjacent to the building known as 'Convento de las Madres'; and bounded on the north by the sea; on the south by the highway from San Juan to Río Piedras; on the east by land formerly of Mr. Francisco Ramos Latour, and now of the other contending party, Mr. Alvarez Nava, and on the west by the said 'Convento de las Madres', now a charity school for girls belonging to The People of Puerto Rico."

As may be seen, the length of the parcel from the highway to the sea was not mentioned in the first record, which length was mentioned in the record of 1907 as measuring one hundred and twenty meters.

Subsequent transfers took place until the property was finally acquired by the appellant, Mrs. Encarnación Aboy widow of Cintrón, pursuant to an award at a public sale on March 18, 1931, under the description given in 1907.

At this stage, the appellant entrusted the survey of her property to two civil engineers who certified their work showing that the property instead of having a length (*fondo*) of 120 meters, had on one side 147.68 meters and 147.35 meters on the other side, which represented a difference of 27 meters and a fraction.

On June 28, 1937, in order to establish said fact, she executed before a notary an explanatory deed which she presented in the registry accompained by the certificate and the plan of the engineers, together with various certified copies of other deeds and of a plan made in April 23, 1930, by the Division of Public Lands and Records of the Department of the Interior, and the registrar refused to make the correction by the following ruling:

"The correction sought is denied, as it appears that this is not the proper procedure to record the enlargement or extension of the area of a property."

This administrative appeal was taken from said decision. In her brief the appellant claims her right to make the correction by herself and to have it recorded in the registry. She cites in support of her contention Section 28 of the Regulations for. the Execution of the Mortgage Law, two decisions of the General Directorate of the Registries of March 14, 1876, and September 7, 1880, and the decisions of this Court in *Cobb* v. *The Registrar of Property*, 12 P.R.R. 211; *Figueroa* v. *The Registrar of Property*, 22 P.R.R. 612; *Delgado* v. *Registrar of Arecibo*, 29 P.R.R. 807; *Portocarrero* v. *Registrar*, 34 P.R.R. 283; also 1 Galindo (1903 ed.) 581.

We have examined Section 28 of the Regulations for the Execution of the Mortgage Law and it does not contain any provision which refers to the matter in controversy. Doubtless, the citation was made following the decisions of the General Directorate of the Registries of March 14, 1876 and September 7, 1880 above cited, which refer to the Regulations that existed prior to those in force in this island since 1893.

We have also examined said decisions and in our judgment, instead of supporting the contention of the appellant they rather justify the action taken by the registrar.

The former appears in the Official Compilation of Laws, Royal Decrees, Royal Orders, Circulars, and Resolutions which have been rendered with reference to the Registry of Real Property and Other Real Rights . . . published by the General Directorate of Civil, Real Property, and Notarial Registries, at page 262 of the volume that contains the decisions of 1874–78, its findings and disposition parts being as follows;

"Considering that although Section 28 of the General Regulations in force provides that when the name, location, area, boundaries or other important circumstances, do not appear in the titles presented in the same manner that they appear in the Registry, the circumstances which have changed shall be set out in the record and a simple reference made as to the others, this provision should not be understood in the sense that no matter what the difference which appears is, even though this creates a doubt as to the identity of the properties, the entry requested should be made; because, apart from the fact that such practice would be contrary to the extensive powers which the law gives to the registrar to pass upon the instruments in their extrinsic as well as in their intrinsic forms, it would be tantamount to authorizing confusion and disorder in the books and the recorded properties, and would give rise to fraud and prejudice against the public treasury;

"Considering that the correct interpretation of said Section 28 seeks nothing else than to avoid unnecessary repetitions in the entries in the books when the description to be made of the properties is the same that appears already in the Registry, and only to note the differences which may result in any important circumstances; it being understood that these diffierences should not be of such a nature as to reasonably create a doubt as to the identity or similarity of the property, but only those which are the result of the changing nature of the circumstances determined by the records, as the boundaries, agricultural use, price, name or number of the property; or those resulting from natural accidents, such as the increase or diminution of a property by alluvion or force of a river, or in

general, those which result from error, misinterpretation, or any other reasonable cause which may have previously occurred in the description of the property;

"Considering that in the case the object of this consultation the interested parties confined themselves to stating that according to the survey made, the true area of the property consisted of 98 yokes (*yugadas*) of land instead of 80, as it appears from the entries the Registry, and that the difference of 18 yokes of land, which is equivalent to 86.400 Aragon square yards, is not proved to be due to error made in the previous survey, for which reason and until such fact is established, we must presume that said difference between both surveys is due to subsequent increase or occupation of adjacent lands, or to concealment made to diminish the taxes imposed on the property, to which last presumption may lead the fact that the boundaries are the same and the fact that the first record was made by virtue of a certificate issued with reference to the assessments of taxes of the municipality;

"Considering that the Registrar can never legally make the record requested concerning the yokes of land which are not recorded, for he must always demand the proof of the ownership or of the possession as provided for by Section 20 of the Law, and make the proper payment of the fees to the Treasury as to the same, at least until it is conclusively proved, in the judgment of the Registrar and without prejudice to the legal remedies, that in the first survey an involuntary error on the part of the experts or surveyors in charge of the same was in fact committed;

"This General Directorate has decided to answer the consultation of the Registrar of Property of Tarrazona, by holding that the record of the deed of sale presented should be denied, as to the difference of the 18 yokes of land between the description of the property as it appears in the Registry, and the description made in said instrument, until the legal acquisition of the same is proved as provided by Section 20 of the Mortgage Law and other legal provisions."

And the second decision, published at page 465 of the succeeding volume of said compilation, 1872–82, is to the same effect.

With reference to the four decisions of this Court which are cited it will be sufficient to refer to two of them: those of *Delgado* and of *Portocarrero, supra* as the former analyzes

and applies the previous cases of *Cobb* and *Figueroa, supra.*
In the *Delgado* case the Court said:

"In the case of *Cobb* v. *Registrar of Property*, 12 P.R.R. 211, we said:

" 'The General Directorate of Registries of Property has held in a number of decisions that *in important* (unimportant differences between the area of estates according to the records in the registry and according to the documents presented for record, are not sufficient to question the identity of the estates, especially when there is no difference in the boundaries, and the registrar must record the same in the registry in the form prescribed in the regulations.'

"Later this court decided the case of *Figueroa* v. *Registrar of Arecibo*, 22 P.R.R. 657, on that theory, one of the Associate Justices dissenting.

"In the case of *Cobb* v. *Registrar, supra,* we cited the decision of the General Directorate of the Registries of Property of November 8, 1877, to the effect that a property described in a deed as having an area different from that which it is shown to have in the old books should be recorded when the difference is slight, and the difference of 6 acres in this case is slight, for it is less than ten per cent of the area.

"And it is not important that the certificate of the survey made after notifying the grantors and the adjoining owners was not exhibited in the registry, for that was the very contention in the case of *Figueroa* v. *Registrar of Arecibo, supra,* which the majority of the court did not sustain.

"There is no prejudice to third persons in making the correction sought, for the registry would show that the correction is made in view of the statements of Manuel Delgado Toledo, and in acquiring any real right in the property a third person can exact of the grantor whatever may be proper to secure his right as to the area of the property if he should entertain any doubt about it." *Delgado* v. *Registrar of Arecibo*, 29 P.R.R. 807.

In the Portocarrero case the following doctrine was established:

"The area of a property as recorded in the registry can not be increased by means of an explanatory deed wherein it is stated only that a survey showed that the property had a greater area, without specifying the surplusage, until the lawful acquisition of the difference is shown, or unless it is of little importance in proportion

to the total area, or it is shown that in the first survey the error was involuntary.'' *Portocarrero* v. *Registrar,* 34 P.R.R. 283.

Aside from the fact that whole of said jurisprudence was established with reference to rural properties, let us see if the attendant circumstances of this case place the same within said jurisprudence.

The difference in area which is sought to be corrected is important. In accordance with the description of 1907 the property had a frontage of 37 meters on the highway and also 37 meters on the sea, its length being 120 meters, which represented an area of 4440 square meters; and according to the deed of which record was asked and denied the length of 120 meters increased to 147 and a fraction, which gave it an area of more than 5439 meters that represented an increase of more than 1000 meters or about 23%.

But there is still more. Although the boundaries remain the same, there is one which was very carefully fixed in the deed of 1876 as follows: ''its corresponding length (*fondo*) until it reaches the sea, which it borders on the north'', and on this respect the registrar in his brief states as follows:

''We wish to call attention to the fact, which is of common knowledge that several urban properties, situated in this city, along the old main highway now Ponce de León Avenue, between Stops 10 and 26, more or less, appear recorded in the Registry of Property stating the extent of their length (*fondo*) and furthermore, stating that this rear part abuts on 'the sea' or on 'the swamps', and it is atonishing to think what would happen if each owner of said urban properties was permitted to record the extent of the same to 'the sea' or to 'the swamp' as the length of their properties.

''The changes which have occurred in the lands along said Avenue are also of public knowledge and have occurred by the drainage of the beaches or swamps on both sides of said highway or avenue.''

That being so, we do not think that the registrar acted contrary to views expressed by the commentator Galindo in the very citation which the appellant makes in her brief, thus:

''Regarding discrepancies in area, the matter is left to the discretion of the Registrar, who in making or refusing a record, must

not overlook the information given to him, the knowledge of the persons, the origin of the property, the period of possession, and other data which is easily obtained shortly after working in the Registry". 1 Galindo 1903 ed. 581.

We do not decide the question of whether or not the appellant has a substantial right to the ownership of a lot of 147 meters and a fraction in length. What we do decide is that in a case like the present one, in order to correct any existing error, the interested party can not act alone, but must act with the intervention of her adjacent owners, especially with the adjacent owner on the north, as said boundary may have changed as a matter of fact the accretion from the sea which here forms an inlet, or it may be susceptible of a different appreciation regarding the exact point to which it extends. And for such cases the law in effect in Puerto Rico provides the proper remedies.

The decision appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.